No. 82-220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

BRONKEN'S GOODTIME COMPANY,

        Petitioner and Respondent,

  -vs-

DAVID J. BISHOP,

        Respondent and Appellant.

Appeal from: The District Court of the Eighteenth Judicial District, In and for the County of Gallatin, The Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Wellcome & Frost, Bozeman, Montana

    For Respondent:

        Lyman H. Bennett, III, Bozeman, Montana
        Paul J. Van Tricht, Dept. of Labor, Helena, Montana.

Submitted on Briefs: September 9, 1982

Decided: December 6, 1982

Filed: DEC - 6 1982

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff appealed from a District Court reversal of a hearing officer's award to plaintiff of wages and a penalty due from defendant employer. We vacate the judgment and reinstate the hearing officer's decision.

John Bronken incorporated defendant corporation in March, 1979, with the anticipation of being a wine distributor because the wine initiative had passed, legalizing the sale of wine in grocery stores as of July 1, 1979. In early April, 1979, plaintiff and John Bronken, president of defendant corporation, met at the Elks Club in Bozeman, Montana, to discuss the terms of plaintiff's employment with defendant. Plaintiff was to be the head of the wine department. There is a conflict of testimony as to what was agreed upon at this meeting. Defendant claims that the union contract under which some of his other employees were hired was discussed in relation to plaintiff's hourly wage only (plaintiff was paid as a driver-salesman under the contract) and that the rest of the union contract at issue here was not applicable to plaintiff. Plaintiff claims that all aspects of his employment were to be governed by the entire union agreement.

Plaintiff requested to be paid weekly as was customary with the union employees, but plaintiff also expressed disapproval of joining the union so money which would have ordinarily gone to his union pension and hospitalization benefits was paid to him directly. The topics of sick leave, vacation pay and overtime compensation were not addressed at this meeting.

Prior to April 16, 1979, plaintiff went to defendant's

office to obtain some sweeping compound to clean out plaintiff's apartment and Bronken gave plaintiff a copy of the union agreement. No portions of this agreement were edited or stricken out.

Although plaintiff did not actually appear at defendant's place of business to begin working until April 23, 1979, his pay raises indicate that his official hiring date was April 16, 1979. His duties were to manage and set up the wine department for defendant and included promoting the wines defendant wholesaled to restaurants and managing the accounts thus set up.

Dan Rasmussen was hired on a day-to-day basis for approximately two weeks to assist in setting up the wine department in its initial stages and, at the end of that time, was laid off. During the fall of 1979, Gary Johnson was hired as a wine deliverer, which included delivering wine that plaintiff had presold. Johnson also received instructions from plaintiff on displays to be built and on keeping store shelves stocked with wine. John Bronken testified that Johnson reported directly to plaintiff and no one else.

Plaintiff was discharged on April 14, 1980, and on June 17, 1980, plaintiff filed a wage claim with the Labor Standards Division of the Department of Labor and Industry, alleging that defendant owed him wages including overtime and payment for holidays, vacations and for working on his birthday. On January 19, 1981, a hearing was held before a hearing officer of the Labor Commission. The hearing officer found that the union contract was the best indicator of the employment relationship between plaintiff and

-3-

defendant and that it governed said relationship. The hearing officer also found that plaintiff was not a supervisor and that defendant owed plaintiff $1,404.48 in wages which included overtime, vacation pay, and four hours pay on the day of discharge and that defendant owed a penalty of $1,404.48 by virtue of section 39-3-206, MCA.

On February 20, 1981, the Department of Labor and Industry ordered defendant to pay these two sums to the Department to hold in trust for plaintiff. The Department order was appealed to the Eighteenth Judicial District Court, Gallatin County, and the Department intervened. The District Court reversed the hearing officer's determination and found that defendant owed plaintiff nothing because there was no mutual consent with regard to overtime pay, holiday pay or pay for the day of discharge. Motions to amend the District Court order were denied. The Department and plaintiff appeal from the District Court decisions reversing the hearing officer's decision and denying the motion to amend.

We frame the issues on appeal thus:

(1) Was the hearing officer's conclusion that the union agreement governed the employment relationship between plaintiff and defendant clearly erroneous in view of the reliable, probative and substantial evidence on the whole record?

(2) Was the hearing officer's determination that plaintiff was not a supervisor clearly erroneous in view of the reliable, probative and substantial evidence on the whole record?

Before addressing these issues, we initially take note

of the scope of judicial review of agency decisions:

"(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional or statutory provisions;

"(b) in excess of the statutory authority of the agency;

"(c) made upon unlawful procedure;

"(d) affected by other error of law;

"(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

"(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

"(g) because findings of fact, upon issues essential to the decision, were not made although requested." Section 2-4-704(2), MCA.

Our limited scope of judicial review of agency decisions was recently discussed in State ex rel. Montana Wilderness Association et al. v. Board of Natural Resources and Conservation et al. (1982), ___ Mont. ___, 648 P.2d 734, 39 St.Rep. 1238. A court may not reverse the agency decision unless substantial rights of the appellant have been prejudiced because the agency determination was clearly erroneous in light of the reliable, probative and substantial evidence (section 2-4-704(2)(e), MCA). Also, a reviewing court may not substitute its judgment for that of the agency's as to the weight of the evidence on questions of fact (section 2-4-704(2), MCA). In Montana Wilderness

-5-

Association, supra, we noted that our review was limited to determining whether the administrative body's decision was supported by substantial evidence.

Regarding the first issue, plaintiff argues that there are a number of correlations between the parties' actual conduct and the terms of the union agreement, including the facts that plaintiff received in cash the equivalent of union health and pension benefits, he was paid on all holidays mentioned in the union agreement except his birthday and was paid weekly as were most union employees. Plaintiff further argues that there was an implied covenant of good faith and fair dealing in employment contracts, citing Gates v. Life of Montana Insurance Company (1982), ___ Mont. ___, 638 P.2d 1063, 39 St.Rep. 16, and that since defendant created the ambiguity in the employment contract, the ambiguity should be resolved against defendant.

Appellant Department contends that the District Court erred in applying the law of express contracts to the facts and that the hearing officer correctly applied the law of implied contracts. The Department then reasons that conduct of the defendant required a finding that the union contract was an implied part of the employment between plaintiff and defendant.

Defendant concedes that the portions of the union contract relating to wages, reimbursement for travel expenses and health and pension benefits were incorporated into the employment agreement, but argues that there was no mutual consent with regard to overtime, holiday pay and pay on day of discharge. Defendant further argues that there must have been a specific identification of the terms of the union

agreement to be incorporated into the employment agreement between plaintiff and defendant before adoption by reference may be had and, since there was no discussion of those terms at the meeting at the Elks Club, they may not be incorporated.

There was substantial evidence here to support the hearing officer's findings. We affirm them. Matter of Shaw (1980), ___ Mont. ___, 615 P.2d 910, 37 St.Rep. 1480. It is clear from the record that plaintiff's employment contract paralleled the union contract in numerous ways including paid holidays, health and pension benefits, weekly paychecks and travel expense reimbursement. It is also uncontroverted that defendant furnished plaintiff with a copy of the union agreement with no portions deleted or marked out. The hearing officer could reasonably conclude, as he did, that the union contract could also be looked to for the contested portions of plaintiff's pay, i.e., overtime, vacation pay, payment on the day of discharge, and holiday pay.

The focus of the second issue involves the hearing officer's rejection of defendant's claim that plaintiff acted in a supervisory capacity and was thus exempt from overtime pay consideration. Plaintiff argues that even if the union agreement is not incorporated into the employment agreement, it is clear that plaintiff is still entitled to the overtime wages awarded because plaintiff was not a supervisor or bona fide executive under section 39-3-406(1)(j), MCA. To be a bona fide executive requires that the individual customarily and regularly supervise at least two fulltime employees or the equivalent. Rosebud County v. Roan (1981), ___ Mont. ___, 627 P.2d 1222, 38 St.Rep. 639.

See also, Garsjo v. Department of Labor and Industry (1977), 172 Mont. 182, 562 P.2d 473.

Defendant employer points to the fact that Gary Johnson basically worked for plaintiff and that plaintiff was also responsible for the supervision of Dan Rasmussen who was hired for approximately two weeks to help set up the wine displays.

There was substantial credible evidence to support the hearing officer's determination. Shaw, supra. The record wholly fails to show that plaintiff customarily and regularly supervised at least two fulltime employees. At best, plaintiff regularly exercised authority over one employee (Johnson) in certain aspects of Johnson's job (Johnson would deliver wine that plaintiff had presold). Plaintiff did not customarily and regularly supervise Rasmussen.

Accordingly, the District Court decision is vacated, and the hearing officer's determination is reinstated.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

-8-